Filed 9/25/20  P. v. Amador CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>LOEL AARON AMADOR,<br><br>        Defendant and Appellant. | A158908<br><br>(San Francisco<br>Super. Ct. No. SCN230962) |

Appellant Loel Aaron Amador was convicted of robbery, theft by fraud, and simple assault.  On appeal, he challenges his robbery conviction, arguing that insufficient evidence showed that he had actual or constructive possession of the victim's property.  According to him, because there was a lack of such evidence, the trial court prejudicially erred in instructing the jury under CALCRIM No. 376, which explains that guilt may be inferred under certain circumstances if the defendant possessed recently stolen property.  We affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

In the early hours of November 16, 2018, the victim was walking on a sidewalk in the Mission District of San Francisco.  A man wearing a black hooded sweatshirt, later identified as Amador's cousin, Adiel Escobar, walked

1

up to him and said, "[G]ive me all your stuff." The victim tried to walk away, but a car pulled up, and a second man got out and joined the first in demanding the victim's possessions. The two assailants yelled at the victim and punched him "all over," and the victim ended up on the ground. The victim gave the second assailant some of his possessions, including his wallet, which contained credit cards, and cell phone.

The two assailants drove away in what a video recording showed the was a dark gray Honda Accord. Shortly after the attack, one of the victim's credit cards was used to make a purchase at a 7-Eleven store. The store's surveillance video showed both Amador and Escobar, who was still wearing the black hooded sweatshirt. After browsing the aisles and gathering "junk food," Escobar used a credit card to pay for the items, with Amador standing nearby.

Amador was arrested two months later. Shortly before his arrest, he was driving a dark gray Honda Accord, and officers found paperwork in his home and car showing that a Honda Accord was registered to him and his girlfriend. In Amador's home, officers found clothing that matched the clothing he was wearing in the 7-Eleven video.

Amador was charged with second degree robbery, theft by fraud, and assault by force likely to produce great bodily injury.[1] A jury convicted him of the first two offenses. It acquitted him of assault by force likely to produce great bodily injury but found him guilty of the lesser included offense of simple assault under section 240. The trial court placed him on probation for three years, subject to various terms and conditions.

---

[1] All statutory references are to the Penal Code. The robbery charge was brought under section 211; the theft by fraud charge was brought under section 484g, subdivision (a); and the charge of assault by force likely to produce great bodily injury was brought under section 245, subdivision (a)(4).

## II.
### DISCUSSION

*A.    Substantial Evidence Supports the Jury's Determination that Amador Possessed the Victim's Property.*

Amador contends that insufficient evidence supports the jury's finding that he possessed the victim's credit cards.  Without such evidence, he argues, it was improper for the trial court to instruct the jury under CALCRIM No. 376, which explains that guilt may be inferred under certain circumstances when a defendant was in possession of stolen property.[2]  We are not persuaded.

To evaluate claims challenging the sufficiency of the evidence, " 'we review the whole record to determine whether . . . [there is] substantial evidence to support the verdict . . . such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  In applying

---

[2] The version of CALCRIM No. 376 read to the jury was as follows:

"If you conclude that the defendant knew he possessed property and you conclude that the property had in fact been recently stolen, you may not convict the defendant of either Count 1 or Count 3 based on those facts alone.  However, if you also find that supporting evidence tends to prove his guilt, then you may conclude that the evidence is sufficient to prove he committed the crimes as charged in Counts 1 or 3.

"The supporting evidence need only be slight and need not be enough by itself to prove guilt.  You may consider how, where, and when the defendant possessed the property, along with any other relevant circumstances tending to prove his guilt of either Count 1 or Count 3.

"Remember that you may not convict the defendant of any crime unless you are convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt."

3

this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) " ' " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' " (*In re George T.* (2004) 33 Cal.4th 620, 631.) Reversal is required only if " 'it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

Amador asserts that "[t]he only direct evidence of whether [he] or Escobar had actual possession of the stolen cards was the 7/11 security video." According to him, this "video demonstrates that Escobar had the stolen credit cards in his pocket and that [he] never took physical possession of any of [the credit cards]. The video plainly provided no evidence of [his] actual possession of the stolen cards." In response, the Attorney General points out that *other* direct evidence supported the jury's determination that Amador had actual possession of the credit cards, including the evidence showing that at the time of the crime the victim gave his property to the second assailant, who the jury could have reasonably inferred was Amador. Amador concedes the argument "has a superficial appeal," but he maintains that "it is not supported by logic or precedent." We agree with the Attorney General.[3]

---

[3] In light of our conclusion, we need not address the Attorney General's alternative arguments that substantial evidence demonstrated that Amador also had *constructive* possession of the credit cards, or that any error in instructing the jury with CALCRIM No. 376 was harmless.

The victim testified that when he was on the ground, he gave his wallet to the second assailant. Ample—indeed, compelling—evidence was presented supporting the inference that the second assailant was Amador. The first assailant wore the black hooded sweatshirt and was identified at trial as Escobar. The second assailant drove the car, which the evidence suggested was registered to Amador, and Amador was identified as being with Escobar in the 7-Eleven wearing clothes that were later found in Amador's home. Amador cannot earnestly maintain that there was insufficient evidence for the jury to conclude that he was the second assailant. There were only two assailants, one of whom was the first assailant (who we know was Escobar), and Amador does not even appeal his assault conviction, which establishes that he must have been the second assailant.[4] Because ample evidence supports an inference that the second assailant was Amador, we reject his insistence that "[Escobar] remained in sole control of the stolen cards, as at all times the stolen cards were on Escobar's person or in his hands."

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) Amador's argument is focused solely on the taking element of the crime. "The 'taking' aspect of robbery consists of two parts—' "gaining possession of the victim's property and asporting or carrying away the loot." ' " (*In re Aaron J.* (2018) 22 Cal.App.5th 1038, 1058.) "The asportation element of a robbery allegation is satisfied when the accused exercises dominion and control over the victim's

---

[4] Amador argues that the "greatest weakness" in the prosecution's case was that the victim's description of the second assailant's size and weight was incongruent with Amador's actual size and weight. But any conflicts in the evidence were for the jury to resolve. (See *People v. Curl* (2009) 46 Cal.4th 339, 342, fn. 3.)

possessions through some small movement of those possessions. [Citation.] Indeed, cases repeatedly emphasize that the crime of robbery is completed upon *any* asportation, however slight or short." (*Ibid.*)

When the victim here surrendered his property to Amador at the time of the assault, Amador acquired possession of it, and he and Escobar then absconded with it. It is simply inconsequential that at some point Amador conveyed the victim's credit cards to Escobar, who used one to purchase the 7-Eleven items. Because substantial evidence supports the finding that Amador possessed the stolen goods, we necessarily reject his corollary argument regarding CALCRIM No. 376, which is premised on the contention that there was no such evidence.

## III.
### DISPOSITION

The judgment is affirmed.

_____

Humes, P.J.

We concur:

_____

Margulies, J.

_____

Sanchez, J.

*People v. Amador*  A158908

7